**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BEVERLY BARNETT,                                          Case No. 1:12-cv-532

        Plaintiff,                                          Beckwith, J.
                                                          Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Beverly Barnett filed this Social Security appeal in order to challenge the Defendant's determination that she is not disabled.   *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents six claims of error, all of which the Defendant disputes.   As explained below, I conclude that the ALJ's finding of non-disability should be REVERSED because it is not supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

Plaintiff applied for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in April and May of 2006, alleging disability beginning on October 1, 2005 due to both mental and physical impairments.   After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").   An evidentiary hearing was first held in February 2009, at which Plaintiff was represented by counsel.   At the hearing, ALJ Amelia G. Lombardo heard testimony from Plaintiff and from a vocational expert.   On

March 17, 2009, the ALJ denied Plaintiff's application in a written decision, concluding that Plaintiff was not disabled. (Tr. 103-119).

Proceeding at the administrative level, Plaintiff successfully appealed the ALJ's first decision to the Appeals Council, which remanded the case back to the ALJ for further fact-finding at a second hearing. (Tr. 119-121). The Appeals Council directed the ALJ to reconsider the following issues: (1) the evaluation of nonexamining source opinions of record, including Dr. Glaser's findings that Plaintiff had a frozen right wrist and difficulty bending at the waist due to obesity, and the consistent opinions of Drs. Holbrook and Hinzman; (2) Dr. Staskavich's opinion concerning Plaintiff's mental limitations; (3) third party witness statements from family members; and (4) February and March 2009 counseling progress notes from Plaintiff's therapist. (Tr. 119-120). Additionally, the Appeals Council directed the ALJ to "[o]btain additional evidence concerning the claimant's impairments….[which] may include, if warranted and available, a consultative mental status examination and medical source statements about what the claimant can still do despite the impairments." (Tr. 120). The ALJ also was instructed to "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record…[and] further evaluate the examining and nontreating source opinions…" (Tr. 120). Last, the Appeals Council directed the ALJ to "[e]valuate the statements in the record of the claimant's witnesses," and "[i]f warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (Tr. 120).

The ALJ chose not to send Plaintiff for an additional consultative mental status exam. After presiding over a second evidentiary hearing in July 2010 (Tr. 40-66), the

ALJ issued a second decision on February 23, 2011, again concluding that Plaintiff was not disabled.  (Tr. 11-32).   The Appeals Council denied additional review, leaving the ALJ's second decision as the Defendant's final determination.

The record reflects that Plaintiff was 51 years old at the time of the ALJ's second decision.  She has a limited education, having dropped out in the ninth grade due to pregnancy. (Tr. 13-14).  She resides primarily with her boyfriend, but also stays with her adult children for 3-4 days at a time periodically.  (Tr. 13).

Although she previously worked as a nurse's aide or home health aide, Plaintiff has not engaged in substantial gainful activity since her alleged disability date in October 2005.  She is insured for Title II benefit purposes (relevant to DIB only) through December 2010.  Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff has the following severe impairments: "lumbar spine degenerative disc disease, obesity, depression (since April 2009)." (Tr. 14).  The ALJ determined that none of Plaintiff's impairments alone, or in combination, met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  (Tr. 23).  Rather, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of medium work, with the following additional limitations:

> essentially unskilled simple tasks; low-stress duties (i.e., no assembly-line production quotas or fast-paced duties, minimal contact with the general public); no more than frequent stooping or crouching.

(Tr. 24).  Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while precluded from her past work, Plaintiff could still perform other jobs that exist in significant numbers in the national economy, including laundry laborer, janitor, and dining room attendant, as well

as light level jobs such as mail clerk, office cleaner, and photocopy machine operator. (Tr. 30-31). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. (Tr. 31).

On appeal to this Court, Plaintiff argues that the ALJ erred: (1) in failing to give controlling weight to Plaintiff's treating psychiatrist and in improperly considering the opinion of her treating therapist and other consulting professionals; (2) in improperly assessing Plaintiff's physical RFC as capable of performing work at the medium exertional level; (3) in failing to comply with SSR 02-01p when she considered the impact of Plaintiff's obesity; (4) by improperly evaluating Plaintiff's credibility, including her allegations of disabling pain; (5) by failing to properly consider third party statements by family members; and (6) by submitting an improper hypothetical to the vocational expert. The first two errors require remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB or SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B.  Specific Errors

### 1.  Evaluation of Medical Evidence Regarding Plaintiff's Mental Impairment

Plaintiff's first claim of error focuses on her mental impairment.  She breaks down the error into two subclaims: 1) that the ALJ erred by failing to categorize her impairment prior to April 2009 as "severe," and 2) the ALJ erred by failing to include additional limitations concerning her mental impairment after April 2009.  Plaintiff contends that in both respects, the ALJ improperly evaluated the medical evidence of record, by disregarding the opinions of her primary care physician and treating psychiatrist, and by misinterpreting or rejecting the opinions of consulting psychologists and her treating therapist.  Although the undersigned finds no reversible error concerning the pre-April 2009 analysis, the closeness of that issue further supports the conclusion that this case must be remanded for review of the post-2009 evidence.

### a.  Legal Standards

The relevant regulation concerning the opinions of treating physicians, 20 C.F.R. §404.1527(d)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in your case record, we will give it controlling weight."  *Id.*; *see also*

*Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).

The reasoning behind what has become known as "the treating physician rule"

has been stated as follows:

> . . . these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20

C.F.R. § 404.1527(d)(2)).   Thus, the treating physician rule requires "the ALJ to

generally give "greater deference to the opinions of treating physicians than to the

opinions of non-treating physicians."   *See Blakley v. Com'r of Social Security*, 581 F.3d

399, 406 (6th Cir. 2009).

Despite the presumptive weight given to the opinions of the treating physician, if

those opinions are not "well-supported" or are inconsistent with other substantial

evidence, then the opinions need not be given controlling weight.  Soc. Sec. Ruling 96-

2p, 1996 WL 374188, at *2 (July 2, 1996).   In such cases, the ALJ should review

additional factors to determine how much weight should be afforded to the opinion.

These factors include, but are not limited to: "the length of the treatment relationship

and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and

any specialization of the treating physician." *Blakley,* 581 F.3d at 406; *see also* 20

C.F.R. §404.1527(d)(2).   "[A] finding that a treating source medical opinion...is

inconsistent with the other substantial evidence in the case record means only that the

opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."
*Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p).

### b. Plaintiff's Mental Impairment Prior to April 2009

In the ALJ's first opinion in March 2009, the ALJ reviewed the evidence from Plaintiff's primary care physician and from several consulting mental health examining sources, but concluded that Plaintiff had failed to show that her alleged depression and anxiety were "severe" impairments or that they more than minimally affected her ability to function in the workplace. (Tr. 108). Remanding that decision, the Appeals Council directed the ALJ specifically to reconsider the 2006 opinion of an examining consulting psychologist, Catherine Staskavich, Ph.D., and the March 2009 notes from Plaintiff's therapist. (Tr. 119-120). The Appeals Council also encouraged the ALJ to obtain additional evidence, including "if warranted and available, a consultative mental status examination." (Tr. 120).

The ALJ chose not to obtain an additional consultative mental status exam. Instead, after a second hearing, the ALJ again found no "severe" mental impairment prior to her first decision, but did find evidence to support a "severe" mental impairment just after that decision, as of April of 2009. Plaintiff now argues that conclusion is not supported by substantial evidence. The ALJ discussed the medical record extensively, but nevertheless found that it was not until April 2009 "that there was significant deterioration in the claimant's mental functioning capabilities to the extent that she exhibited signs and symptoms of 'severe' affective disorder (with depressive features)." (Tr. 18). Plaintiff argues that she suffered from "severe" mental limitations well before April 2009.

However, the medical evidence discussed below confirms that substantial evidence supports the ALJ's determination that Plaintiff's mental impairment did not more than minimally impact her ability to work prior to April 2009.

Plaintiff argues that her primary care physician, Dr. Wourms, documented her depression and anxiety symptoms "throughout" his treatment notes.[1]  He prescribed psychiatric medications, and recommended that she see a specialist for additional treatment.  Plaintiff testified that she did not follow through with Dr. Wourms's recommendation because she would go through spells where she would not leave her house at all.  (Tr. 84).  However, somewhat inconsistently, she testified at the same hearing that she moved between the places she was staying every few days.  (Tr. 43, 52).

As a basis for rejecting Plaintiff's testimony and that of Dr. Wourms concerning the severity of her mental health impairment prior to April of 2009, the ALJ cited the opinions of three consulting psychologists, Drs. Rosenthal, Waggoner, and Bergsten, none of whom found evidence of any "severe" mental impairment in 2006.  (Tr. 18). The ALJ concluded that the opinions of other sources who offered more severe mental impairments "cannot be given controlling, or even deferential, weight (except to the extent that deterioration in the claimant's mental functioning capabilities is shown by April 2009)" because other conclusions were not "well supported" or "consistent with the other substantial evidence in the case record."  (Tr. 19).  The ALJ reasoned that "[t]he only plausible explanation for such pessimistic assessments of claimant's physical and/or mental capabilities is that such assessments were based on an unquestioning acceptance of the claimant's subjective complaints and allegations."  (Tr. 19).

---

[1]Plaintiff fails to cite to any specific treatment notes, but Defendant does not deny that Dr. Wourms began

In addition to referencing the reports of other consultants, the ALJ cited the fact that Plaintiff did not follow up with Dr. Wourms's recommendation that she pursue psychological treatment in 2006, instead entering specialized treatment in April 2009. Although Dr. Wourms prescribed medication prior to that time, the ALJ discounted his opinion because he is a family practice physician and described Plaintiff's treatment from 2003 and 2005 as "sketchy," stating that it was "impossible" for him to offer any opinions as to Plaintiff's capacity for sustained work activity in June of 2006.  (Tr. 18, 20, 473).  Dr. Wourms did note that Plaintiff had several emergency room visits for what he described as Anxiety Neurosis.  (Tr. 473-474).  However, although he had treated Plaintiff for Anxiety Disorder, when initially asked for a disability determination, Dr. Wourms remarked, "If she indeed desires to further undergo disability determination, perhaps she should see her doctor."  (*Id.*).

The ALJ viewed with suspicion Dr. Wourms's change of heart about offering a disability opinion in September 2006, when after seeing Plaintiff only once (since late 2005), he completed a form for the Butler County Department of Job and Family Services opining that Plaintiff's "extreme anxiety and depression" would render her "unemployable" for 30 days to 9 months –  still declining to check the box for more than 12 months.  (Tr. 18, 20, 497).  The ALJ concluded that Dr. Wourms's sudden shift in his opinion, after just one intervening visit, undermined his credibility.  Also, the opinion was not one entitled to controlling weight, since the determination of disability is reserved to the Commissioner.  *See* 20 C.F.R. §404.1527(e).

Plaintiff asserts that the ALJ ignored other consultative examination reports.  For example on June 28, 2006, consultant Dr. Swift first opined that Plaintiff presented with

---

treating Plaintiff's mental impairment at least as far back as 2006.

significant depressive symptoms, within the context of chronic pain and family stress. (Tr. 501).  Dr. Swift also opined that her symptoms would likely interfere with Plaintiff's performance in a work environment, although she anticipated that Plaintiff's symptoms would improve with treatment, including pain management and mental health treatment including counseling and medication.  (Tr. 501).

On November 21, 2006, Dr. Staskavich, whose opinion the Appeals Council specifically asked the ALJ to reconsider, offered similar opinions concerning Plaintiff's depressed mood and affect.  Dr. Staskavich indicated that Plaintiff would have marked impairments in the areas of sustaining concentration, persistence or pace and social interaction.  (Tr. 354-356; *see also* Tr. 494).  However, despite those "marked" impairments, Dr. Staskavich also opined that Plaintiff's "[d]epression can be effectively managed with psychotropics - would not preclude employment."  (Tr. 495).

In her second decision after remand, the ALJ explained that she had considered the same consultants' reports prior to her first decision, but determined that Plaintiff had failed to establish the existence of any severe mental impairment based primarily upon other consulting  reports by Drs. Rosenthal and Waggoner.  The ALJ stated:

> The rather pessimistic assessment presented by Dr. Swift and the conclusions of psychologist Catherine Staskavich on behalf of the Butler County Department of Job and Family Services…were [previously] rejected as being less than credible.  No additional evidence has been submitted which would render these [prior decision] findings inapplicable. It was not until April 2009 that evidence shows significant deterioration in the claimant's mental functioning capabilities….

(Tr. 18).  The ALJ further explained that even though Dr. Swift opined that Plaintiff would be "unemployable" for 30 days to 9 months, and Dr. Staskavich found Plaintiff to be "markedly limited in many aspects of mental functioning," neither consultant "indicated that the claimant's 'unemployable' status was expected to last for a

continuous period of at least 12 months," and the two opinions were "not supported by substantial objective medical evidence or clinical findings." (Tr. 18). Based upon the consultants' opinions that any disability would be temporary and responsive to treatment, the fact that the consultants evaluated Plaintiff only once, and contrary opinions of other consultants, the ALJ gave the opinions of Drs. Swift and Staskavich "little weight." (*Id.*).

The main opinion on which the ALJ relied was that of consultant Dr. Rosenthal, dated July 5, 2006, and affirmed by consulting psychologists Waggoner and Bergsten. (Tr. 331-333, 363). Dr. Rosenthal also diagnosed Major Depression and Anxiety Disorder NOS (Tr. 317), and assessed Plaintiff's global assessment of functioning ("GAF") score at 60, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. (Tr. 318). Notwithstanding that "moderate" designation, the ALJ concluded that Dr. Rosenthal's opinions supported her conclusion that Plaintiff did not suffer from a "severe" mental impairment in 2006, or at any time prior to April 2009. The ALJ pointed to Dr. Rosenthal's conclusions that Plaintiff's abilities to understand, remember, and follow simple instructions were not impaired, that her ability to relate adequately to others was only mildly impaired, similar to her abilities to maintain attention and concentration, and to tolerate stress. (Tr. 17). The ALJ also noted that Plaintiff reported to Dr. Rosenthal that she performed household chores such as cleaning, laundry and cooking, operated a motor vehicle, managed her own finances, shopped, attended church, and attended to her own personal needs. Dr. Rosenthal observed no particular signs of anxiety, and described her affect as only mildly depressed. (Tr. 17).

Last, the ALJ cited the lack of evidence that Plaintiff's alleged mental impairment had any impact on her ability to perform activities of daily living, maintain social functioning, or maintain concentration, persistence, or pace prior to April 2009.  (Tr. 20). In addition to the activities noted above, Plaintiff reported daily contact with friends, and frequent telephone contact with others.  (Tr. 20).  Also, there was no evidence of significant decompensation prior to April 2009.  (Tr. 20).

Based upon this evidentiary review, the undersigned concludes that substantial evidence supports the ALJ's determination that Plaintiff's mental impairment prior to April 2009 was not "severe." While contrary evidence exists, the ALJ's analysis and conclusion falls within the zone of choice.

### c. Plaintiff's Mental Impairment After April 2009

The ALJ found that Plaintiff had established a deterioration in her mental functioning sufficient to establish a "severe" mental impairment beginning in April 2009, close in time to when she began treatment with a mental health specialist.  (Tr. 21). Nevertheless, the ALJ found that impairment had minimal impact on Plaintiff's RFC, and was not disabling.

Plaintiff argues that the ALJ failed to give controlling weight to the opinions of her treating psychiatrist, Alice Onady, M.D., and failed to consider additional opinions from Ms. Pearson.  With respect to Dr. Onady, with whom Plaintiff treated from February 2009 through 2010, Plaintiff contends that the ALJ had no contrary RFC mental health assessment, and erred by acting as her own medical expert in determining Plaintiff's limitations, rather than obtaining an updated medical opinion as suggested by the Appeals Council.

Dr. Onady opined that Plaintiff had suffered an affective disorder of at least two years' duration that caused more than a minimal limitation of her ability to perform basic work activity.  She assessed Plaintiff's GAF score at "45" on July 12, 2010, reflecting "serious" symptoms and only mild improvement.  Dr. Onady opined that Plaintiff exhibited many severe symptoms, and would be unable to meet competitive standards in two areas required for work.  (Tr. 793).  She also stated that Plaintiff would miss more than 4 days per month due to her mental impairment.

In contrast to Dr. Onady's assessment, the ALJ found that treatment records reflected relatively dramatic improvement, based upon Plaintiff's GAF score going up from a low point of 45 shortly after her discharge from a brief psychiatric hospitalization in June 2010, to a score of 50 in July 2010 (at the time of Dr. Onady's report) to a score of 65 a month later, in August 2010.  (Tr. 27, 815-817).  A GAF score of 65 reflects only mild symptoms.  As previously noted, earlier records reflected that Plaintiff engaged in a fairly broad range of daily activities, including shopping and other social interactions with friends (Tr. 28, 53, 316), and that Plaintiff planned to walk to benefit her health.  (Tr. 771).  Focusing on the most recent GAF score, and noting the absence of treatment records from Dr. Onady "after August of 2010," the ALJ reasoned that Plaintiff's treatment had been successful.  (Tr. 27, citing DSM-IV-TR at 34).

The ALJ also rejected Dr. Onady's opinion that Plaintiff's mental status was so fragile that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation.  (Tr. 794).  On her assessment form, Dr. Onady checked a box indicating that Plaintiff's depression equaled the criteria for Listing 12.04(C)(2), resulting in a presumption of disability.  (Tr. 793-794).  The ALJ rejected that opinion, because the ALJ found no evidence of "repeated episodes of

decompensation" of at least two weeks' duration had ever occurred, as required by Listing 12.04(C)(2), nor did the ALJ find evidence of "a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate." (Tr. 21).   Indeed, the record reflects only a single hospitalization in June 2010, of less than one week duration.   (Tr. 796-814).   The ALJ reasonably concluded that Dr. Onady's opinion in this respect was unsupported, based on the lack of evidence of Plaintiff's "inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." (Tr. 21).

Notwithstanding the reasonableness of the rejection of at least some of Dr. Onady's opinions, the rejection of all of the treating psychiatrist's opinions cannot be upheld on the record presented. The Appeals Council suggested another consultative mental health exam for good reason; Plaintiff's last agency psychological examinations were in 2006, with decidedly mixed results.  There was ample evidence, including both Dr. Onady's opinions and Plaintiff's therapist's notes, that Plaintiff's mental health condition had deteriorated substantially since April 2009.  The fact that Dr. Onady's last record was dated August 2010 does not necessarily support a lack of treatment, given that the evidentiary hearing was held in July 2010 and the record presumably closed shortly thereafter.[2]  However, the main reason that remand is required in this case is because virtually all of the ALJ's conclusions concerning the level of Plaintiff's mental impairment -- including the rejection of Dr. Onady's opinions – are based on Dr. Rosenthal's 2006 opinions.  Because that consultant's single examination predated (by

_____

[2]Plaintiff's continuing treatment is also evidenced by the records of the therapist, which contain notes dated as late as October 2010. Dr. Onady's RFC assessment also reflects that she saw Plaintiff every two months for medication assessment, with more frequent therapy conducted by Ms. Pearson.

years) the time when even the ALJ classified Plaintiff's mental impairment as "severe," and Dr. Rosenthal did not review more recent records, the ALJ should have (at the very least) acknowledged that fact.

In *Blakley,* the Sixth Circuit reiterated the principle that "[i]n appropriate circumstances, opinions from State agency medical...consultants...may be entitled to greater weight than the opinions of treating or examining sources." *Blakley*, 581 F.3d at 409 (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)); *but see Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(Rejecting a medical opinion solely because a consulting physician disagrees is not an adequate basis for rejecting a treating physician's opinion).   Nevertheless, the Sixth Circuit reversed in *Blakley* because the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment...by Blakley's treating sources," and the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions.  *Blakley*, 581 F.3d at 409 (*quoting Fisk v. Astrue*, 253 Fed.Appx. 580, 585 (6th Cir. 2007)).   Likewise, on the record presented the ALJ unfairly used Dr. Rosenthal's 2006 conclusions to reject the opinions of other consultants and two treating physicians, without adequate discussion of the reasons for doing so.   Given the evidence of Plaintiff's mental impairment in this case, the error cannot be deemed to be harmless or *de minimis.*

Plaintiff additionally argues that the ALJ erred in dismissing the opinions of Ms. Pearson, Plaintiff's therapist, because the ALJ failed to consider the nature of the treating relationship, the frequency of treatment, or the consistency of her opinions with those of Drs. Onady, Swift, and Staskavich.  *See* SSR 06-03p.  The ALJ acknowledged that Ms. Pearson's assessment of Plaintiff's mental limitations in February 2010 "if

credible, would describe a condition of complete disability." (Tr. 17). However, the ALJ rejected that opinion partly on the perception that Ms. Pearson's sessions with Plaintiff focused on "difficulties with [Plaintiff's] significant other," and that when she was away from him, Plaintiff was described as "happy and free."  (Id., see Tr. 819).  The ALJ also described Plaintiff's treatment as "sporadic" based on irregular attendance documented by Ms. Pearson.  (Tr. 16, 545).  The ALJ's comments on the perceived basis for Plaintiff's mental impairment border on an inappropriate medical analysis.  Although Ms. Pearson is not considered to be an "acceptable medial source" like a medical doctor or psychologist, the ALJ should more carefully consider (and discuss) her opinions on remand, as they form part of the more recent record and cannot merely be dismissed on the basis that they contradict some of the 2006 consulting opinions.

### 2. Plaintiff's Physical RFC

The ALJ determined that Plaintiff was capable of performing work at the medium exertional level.  Plaintiff points out that no medical source opined that Plaintiff could perform work at that exertional level.   In fact, the ALJ rejected the opinion of treating physician Dr. Wourms, and of multiple agency consultants who opined that Plaintiff was more severely limited in her physical capabilities.  The undersigned agrees that the physical RFC determined by the ALJ is not supported by substantial evidence, and therefore requires remand.

The first physical RFC opinion in the record comes from consulting physician Aleda Johnson, M.D., who on July 26, 2006, performed a basic medical examination and completed a basic medical form at the request of the Butler County Department of Job and Family Services.  Dr. Johnson noted that Plaintiff was obese, with blood pressure of 170/120.  She opined that Plaintiff could stand/walk for only 5-10 minutes at

one time, and sit for 10-15 minutes at one time, with lifting/carrying limited to 6-10 pounds.  Dr. Johnson further opined that Plaintiff had marked limitations with bending due to back pain, and stated that Plaintiff was unemployable for 12 months or more. The ALJ rejected Dr. Johnson's opinion on grounds that it lacked "objective support" and (according to the ALJ) was inconsistent with the findings of consulting physicians Glaser, Holbrook, and Hinzman.  (Tr. 20).

As discussed below, Dr. Johnson's opinion contained more extreme postural limitations, but was somewhat consistent with the opinion of Drs. Holbrook and Hinzman, and was based upon physical examination findings.  Those findings appeared at least somewhat corroborated by Plaintiff's presentation to the emergency room three days later, on July 29, 2006, for chronic low back pain that had worsened and increased.  The ER record reflects a positive straight leg raising test (Tr. 471) and x-rays showed degenerative joint disease.  (Tr. 472).

On August 30, 2006, Plaintiff attended a consultative evaluation with Loraine Glaser, M.D.  Dr. Glaser also noted Plaintiff's obesity and high blood pressure, and reported that her right wrist was essentially frozen with approximately 10 degrees extension flexion and no ulnar or radial deviation.  (Tr. 337).  Dr. Glaser noted left paravertebral muscle spasm in the lumbar region, but concluded that Plaintiff could engage in a "moderate" amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying, and that she was capable of performing sedentary tasks commensurate with her age.  (Tr. 338-339).   The ALJ cited Dr. Glaser's report in support of her conclusion that the Plaintiff could engage in work at the medium exertional level, even though Dr. Glaser never defined what she meant by her opinion that Plaintiff could engage in a "moderate" amount of various activities.  (Tr. 27).

18

Although Dr. Wourms declined to provide a disability opinion in June 2006, as mentioned above, he did complete a basic medical form on September 1, 2006.  In addition to noting Plaintiff's anxiety and depression, he noted Plaintiff had osteoarthritis of the back, hypertension, and insomnia.  (Tr. 496).  He opined that her ability to stand and walk was affected, but still declined to provide an opinion concerning the number of hours in a day she could stand/walk other than to state "unknown." (Tr. 497).  The ALJ used this ambiguity as a basis for rejecting Dr. Wourms's opinion that Plaintiff's abilities were reduced in any manner. In addition to noting that Dr. Wourms's opinion was vague, the ALJ rejected the opinions of Dr. Wourms on grounds that the two 2006 opinions were inconsistent, and because even in September 2006, Dr. Wourms opined only that Plaintiff would be "unemployable" for up to 9 months, not 12 months or more. Because imaging studies reflected only minor disc bulging and other mild findings, the ALJ concluded that Dr. Wourms's opinion was not well supported, and was "at best vague and speculative."  (Tr. 26).

Two and a half years later on February 6, 2009, after continuing to treat Plaintiff for multiple ailments, Dr. Wourms completed another assessment form at the request of the Butler County Work Place.  On a one-page form, he succinctly opined that Plaintiff was unable to do sedentary work, classroom work, or any other work, due to her back pain and depression.  (Tr. 521).   The ALJ did not discuss Dr. Wourms's 2009 opinion.

Dr. Holbrook, another consulting physician for the state agency, conducted a records review on September 16, 2006.  He listed Plaintiff's primary diagnosis as "morbid obesity," after noting records that reflected Plaintiff's height at 5'6" and weight at 230 pounds, with uncontrolled hypertension.  (Tr. 345).  Dr. Holbrook opined that Plaintiff could not lift and/or carry 20 pounds occasionally, or more than 10 pounds

frequently.  (Tr. 346).  He stated that she could stand and/or walk for not more than 6 hours, with sitting limited to the same amount of time in an 8 hour work day.  Dr. Holbrook opined that handling would be limited to frequently in the right upper extremity, based upon the August 2006 record of a decrease in her range of motion in her right wrist and lumbar spine.  Dr. Holbrook also noted that Plaintiff could only occasionally climb ramps or stairs, could never climb ladders, ropes, or scaffolds, and was limited to "frequently" balancing, stooping, kneeling, and crouching.  Crawling was limited to "never."  (Tr. 347).  Last, he opined that she should avoid concentrated exposure to extreme heat or humidity.  (Tr. 349).

On February 2, 2007, Gary Hinzman, M.D., another agency consultant, affirmed the prior physical RFC as written by Dr. Holbrook.  (Tr. 364).  Noting that Dr. Holbrook found Plaintiff to be only "partly credible" based on his records review, and that Plaintiff's records revealed many findings within normal limits, the ALJ gave Dr. Holbrook's and Dr. Hinzman's opinions "little weight."  (Tr. 25).  The ALJ found the consulting physicians' restriction of Plaintiff to "light" exertional work to be unsupported by objective evidence such as more significant findings on the imaging studies, and undermined by later records from Plaintiff's pain doctor that reflected "improvement" in Plaintiff's pain. (Tr. 25, 27).

On September 28, 2007, Plaintiff was examined by Chacko Alappat, M.D., with the Arthritis and Osteoporosis Center of Southwest Ohio.  (Tr. 383-386).  Dr. Alappatt noted Plaintiff's physical complaints, depression, flat mood/affect, and obesity but did not offer opinions concerning any specific work-related limitations.  (Tr. 383-384).

On January 23, 2008, John Beresh, M.D. began treating Plaintiff for pain management.  Dr. Beresh noted Plaintiff's pain on extension of greater than 5 degrees,

positive with palpation, and right SI joint pain with palpable compression. She had a positive straight leg test.  He diagnosed Sciatica, right, low back pain, osteoarthritis, multiple sites, and facet arthropathy at L4 through S1.  (Tr. 493).  In a March 2010 progress note, Dr. Beresh noted that Plaintiff's medications provided 60% relief for 2 hours.  (Tr. 593-596).  In a note dated April 19, 2010, he reported her pain level was 9-9/10, with her medications providing only 30% relief for 2 hours.  A prior facet injection was somewhat more effective, providing 75% relief for 2 weeks.  (Tr. 592).  Multiple other progress notes from Dr. Beresh reflect varying degrees of relief from the pain medications that he prescribed, ranging from 30-60% reported relief for period ranging from 2-7 hours.  The undersigned concurs with Plaintiff's argument that the records of Dr. Beresh as a whole do not reflect continuous improvement, as suggested by the ALJ, but do reflect an increase in pain with activity.

Remand is required because the ALJ improperly relied on and overstated the 2006 opinion of Dr. Glaser.  As with Plaintiff's mental limitations, the ALJ failed to adequately address the fact that Dr. Glaser did not have access to several years' worth of later records.  The ALJ improperly dismissed those later records, from both treating physicians and other consultants, without adequate grounds.   Long-term treating physician Dr. Wourms, and consulting physicians Johnson, Holbrook, and Hinzman, all offered significantly more restrictive RFC assessments, including specific postural and other limitations relating to Plaintiff's back pain and obesity that were not considered by the ALJ.  By contrast, although Dr. Glaser did not define what she meant by opining that Plaintiff could engage in a "moderate amount" of various activities, her simultaneous reference to sedentary work created an ambiguity that only underscored that her dated

opinion did not provide substantial evidence that Plaintiff could engage in medium level work, with very few restrictions.

### 3.  Plaintiff's Obesity and SSR 02-01p

The ALJ found that Plaintiff weighs 210 pounds at 5' 6 ½ " in height.  (Tr. 13). As the ALJ noted, several of Plaintiff's records suggested that her current weight reflects a loss of approximately 20 pounds.  Plaintiff complains in her third assertion of error that although the ALJ referenced her obesity, the ALJ failed to comply with the legal requirements of SSR 02-01p, by considering the impact of obesity on her degenerative disc disease and RFC.  Historically the Sixth Circuit has required only minimal articulation of obesity during the sequential analysis, *see Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985); *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006)(stating in a case where obesity was not severe, that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.").  So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed.  *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).  Given the number of sentences that reference Plaintiff's obesity and the relatively significant amount of discussion devoted to it, the undersigned finds no *legal* error insofar as the ALJ appears to have complied with SSR 02-01p.  On the other hand, to the extent that this case must be remanded for reconsideration of Plaintiff's mental and physical RFC on other grounds, the Plaintiff's obesity should be reconsidered in the context of the record as a whole.

#### 4.   Evaluation of Plaintiff's Credibility/ Third Party Statements

Plaintiff's fourth and fifth assertions of error both focus on the credibility of her pain complaints.   Plaintiff criticizes the ALJ for finding that Plaintiff's "allegations are…disproportionate and less than credible."  (Tr. 29).   Plaintiff also complains that after the Appeals Council specifically directed the ALJ to consider the third party statements submitted by her family members on remand, the ALJ summarily dismissed those statements by stating that they had been considered, but were not entitled to any special weight.  (Tr. 29-30).   Plaintiff contends that the ALJ should have discussed the contents of the statements.   All three statements corroborated Plaintiff's complaints of back pain and depression, and discussed the effects of those conditions on Plaintiff's functioning.

Defendant argues that SSR 06-03p requires an ALJ only to discuss the weight given to the opinions from "other sources," and that no rule requires detailed discussion of those records.   Defendant contends that the relatively brief analysis was sufficient since the statements merely corroborated complaints that the ALJ had already determined were not fully credible.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions

among the medical records, her testimony, and other evidence.  *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 392.

On the facts presented, the ALJ cited several reasons for finding Plaintiff to be less than fully credible.  Some of those reasons may remain on remand.  However, it is impossible to determine whether all of the reasons for discounting Plaintiff's credibility in this case were unaffected by the referenced errors.  In light of that fact, as well as the relatively cursory analysis devoted to the corroborating third party statements, the ALJ will be directed to reconsider the issue of credibility on remand.  *But see Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)(quoting 42 U.S.C. §423(d)(5)(A))("Subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" ).

### 5.  Alleged Error Regarding the Hypothetical Provided to the VE

In her last assertion of error, Plaintiff argues that the ALJ failed to include all appropriate limitations in the hypothetical provided to the vocational expert.   For much the same reasons discussed above, and without the necessity of further discussion, the ALJ will be directed to reconsider whether additional mental and/or physical limitations should be included on remand.  *But see Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994)("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals.").

### III.  Conclusion and Recommendation

A remand for additional evidence under sentence four is the appropriate course of action in this case.  Plaintiff's back pain, obesity, and mental impairments do not clearly render her disabled, but as discussed above, the ALJ erred in multiple respects in formulating Plaintiff's mental RFC after April 2009, and in determining Plaintiff's

physical RFC.  Those errors cannot be considered harmless.  To the extent necessary, the ALJ is again encouraged to consider obtaining additional consultative psychological evidence on remand.

For the reasons explained herein, **IT IS RECOMMENDED THAT** the decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** because it is supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**


                                                                     */s Stephanie K. Bowman*
                                                                    Stephanie K. Bowman
                                                                    United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

BEVERLY L. BARNETT,                                    Case No. 1:12-cv-532

           Plaintiff,                                              Beckwith, J.
                                                                    Bowman, M.J.

     v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).